IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PAMELA SUE W., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 19-CV-181-JFJ |
| ) | |
| ANDREW M. SAUL, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff Pamela Sue W. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for disability benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), and 423. In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court reverses and remands the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.     General Legal Standards and Standard of Review**

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established

by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History and the ALJ's Decision

Plaintiff, then a 49-year-old female, protectively applied for Title II disability benefits on May 5, 2016, alleging an initial disability onset date of June 15, 2013, which she later amended to November 9, 2016 on advice of counsel. R. 20, 171-172, 39. Plaintiff's claim for benefits was denied initially on July 15, 2016, and on reconsideration on November 23, 2016. R. 61-72, 94-98; 73-89, 100-102. Plaintiff then requested a hearing before an ALJ, and the ALJ conducted a hearing on April 2, 2018. R. 36-60. The ALJ issued a decision on April 16, 2018, denying benefits and finding Plaintiff not disabled because she was able to perform her past relevant work as a program analyst (DOT # 030.162-014; sedentary, SVP 7). R. 17-30. The Appeals Council denied review, and Plaintiff appealed. R. 1-5; ECF No. 2.

Plaintiff met the insured requirements for Title II purposes through December 31, 2016. The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 15, 2013.[1] R. 22. At step two, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease; history of right femur fracture; history of right knee surgery; and obesity. *Id.* Additionally, the ALJ found Plaintiff's history of breast cancer and anxiety disorder both non-severe impairments. R. 22-23. In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had mild limitation in the functional areas of understanding, remembering, or applying information, interacting with others, and concentrating, persisting, or maintaining pace; and no limitation in the functional areas of adapting or managing oneself. R. 23. At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that was of such severity to result in listing-level impairments. R. 24.

After evaluating the objective and opinion evidence, Plaintiff's statements, and Plaintiff's husband's statements, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform "the full range of sedentary work as defined in 20 CFR 404.1567(a)" with no additional limitations. R. 25. Based on the testimony of a vocational expert ("VE") at step four, the ALJ found that Plaintiff could return to her past relevant work as a program analyst. R. 29-30. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). R. 56. Accordingly, the ALJ concluded Plaintiff was not disabled.

---

[1] This date is the original alleged onset date, but the ALJ noted in the beginning of the decision that Plaintiff had amended her alleged onset date to November 9, 2016, during the hearing, and references the correct date later in his decision. *See* R. 20, 27.

4

**III.   Issues**

Plaintiff raises two related allegations of error on appeal: (1) the ALJ failed to properly evaluate the opinions of two consultative examiners; and (2) the ALJ's RFC is "legally flawed" and not supported by substantial evidence.  ECF No. 15 at 6.  The Court reverses based on issues raised in both allegations of error, as explained below.  Because the ALJ's treatment of consultative examination evidence from Jerry D. First, M.D., and Michael Karathanos, M.D. was deficient, the Court finds the ALJ's RFC determination is not supported by substantial evidence, and remand is required.

**IV.   Analysis – ALJ's RFC Is Not Supported by Substantial Evidence**

Plaintiff contends that substantial evidence does not support the ALJ's RFC.  Specifically, Plaintiff argues that the ALJ improperly considered findings from both consultative examining doctors that she was unable to grasp tools such as a hammer, and she that demonstrated reduced ranges of motion in her back.  ECF No. 15 at 8-14.  Plaintiff contends the ALJ's sedentary RFC, with no postural or manipulative limitations, is erroneous based on the ALJ's treatment of both consultative examinations.

On November 9, 2016, Plaintiff presented for consultative examinations with Dr. First and Dr. Karathanos.  Both physicians recorded Plaintiff's subjective complaints and performed objective examinations.  R. 779-786, 789-793.  Dr. First assessed Plaintiff with osteoarthritis, lumbar back pain, morbid obesity, tobacco abuse, history of CA of the breast, and history of renal failure.  R. 781.  Dr. First noted mostly normal ranges of motion, except Plaintiff's hip flexion bilaterally (80/100), and her back extension (20/25), back flexion (45/90), and back lateral flexion (bilaterally 20/25).  R. 783.  Regarding Plaintiff's hands and wrists, Dr. First noted normal ranges of motion but stated that Plaintiff could not effectively grasp tools like a hammer.  R. 785.

Regarding Plaintiff's back, Dr. First found reduced ranges of motion with pain. R. 786. Straight-leg raise testing was negative in both sitting and supine positions. *Id.*

On the same day, Dr. Karathanos assessed Plaintiff with possible L4/5 radiculopathy, "chronic pain disorder on a background of lumbar facet disorder," right bursa pain, sacroiliitis with history of right lateral femur cutaneous neuralgia, left femur fracture, history of plantar fasciitis, history of depression and anxiety, and history of breast cancer treated in 2013. R. 790-791. Dr. Karathanos noted no rigidity, spasticity, atrophy, fasciculations, or involuntary movements in Plaintiff's upper extremities, but noted his examination of Plaintiff's lower extremities was "limited by diffuse pain in the lumbosacral area as well as in the hips and knees." R. 790. He noted positive bilateral straight leg raise testing; significantly decreased lumbar flexion and extension, lumbar bending and rotation, with "all movements [ ] accompanied by pain." R. 790, 793. Dr. Karathanos further noted a "very slow" gait, "at best 15-20% of normal speed." He also stated that Plaintiff could not "perform truly any tandem gait or any walking on heels and toes." *Id.* Dr. Karathanos further noted that Plaintiff could not effectively grasp tools such as a hammer due to her previous mastectomy. R. 792.

> The ALJ's discussion of Dr. First's examination consisted of the following:
>
> On her amended alleged onset date of disability, the claimant underwent two physical consultative examinations (15F; 16F). Jerry D. First, M.D. noted reduced back extension and flexion, reduced left back lateral flexion, reduced bilateral hip flexion, and all other range of motions normal (15F/5-6). Importantly, Dr. First noted no abnormalities of the hand/wrists opining she was able to effectively oppose the thumb to the fingertips, manipulate small objects, and *effectively grasp tool[s] such as a hammer* (15F/7).
>
> In addition, Dr. First noted pain with lumbosacral range of motion testing, but normal heel and toe walking, negative bilateral straight leg raising both sitting and lying, no tenderness and no spasms (15F/8). The cervical examination was unremarkable. Dr. First noted she walked down the 70 foot hallway with a limp involving her right leg, but was able to walk the entire length without stopping or with the use of an assistive device (15F/4).

6

R. 27 (emphasis added).  The ALJ noted the following with regard to Dr. Karathanos's examination findings:

> Michael Karathanos, M.D. conducted the other physical examination noting the lower extremity examination was limited by diffuse pain in the lumbosacral area as well as in the hips and knees, right lower extremity appeared slightly diffusely weak with decreased knee extension and flexion, decreased plantar flexion and extension, 4+/5 strength in the left lower extremity, very slow gait (15-20% of normal speed), limping on the left, unable to perform tandem gait or any walking on heels and toes, positive bilateral straight leg raises, decreased range of motion of the spine, and reduced bilateral reflexes (16F/1-2/5).
>
> Dr. Karathanos' hand/wrist evaluation was not completed, but he did not[e] no carpal tunnel symptoms and an ability to effectively oppose the thumb to the fingertips and manipulate small objects (16F/4).  However, he stated [s]he was unable to grasp tools such as a hammer due to mastectomy.

*Id.*

> When justifying his RFC determination, the ALJ explained:
>
> Based upon the records, the claimant suffers from back pain, obesity, and arthritic pain from past injuries/surgeries involving the right leg; however, the preponderance of the evidence supports her ability to perform the full range of sedentary work.  This is consistent with the following records:  her self-reported 50% pain reduction with medications and injections (19F); on her Function Reports, the claimant alleged feeding animals (1E/2; 9E/2); on her first Report, the claimant alleged preparing meals 2-3 times a week for 1-2 hours and doing 3-4 hours of housework with several breaks; however, on her second Report, she alleged her husband cooks most meals and does all the chores (1E/3; 9E/3); despite her claims of not being able to sit at a desk/use her hands, on her Function Reports, the claimant alleged paying bills by computer and shopping by computer for pet supplies and clothing (1E/4; 9E/4) and she alleged spending time with others via email (9E/5).
>
> Therefore, the undersigned determined the claimant is capable of performing past work as supported by her consultative examination by Dr. First finding no difficulties with her ability to use her hands/wrists (15F) and the second consultative examination noting a normal motor exam and no focal neurological deficits in the upper extremities (16F/2).

R. 28.  The ALJ also used the consultative examination findings to discount the opinion of reconsideration agency physician Peyton Osborne, M.D., that postural limitations were warranted

due to "[l]umbar degenerative disc disease with facet syndrome" (R. 84).  In assigning "little weight" to Dr. Osborne's opinion, the ALJ noted that "the physical examinations in [Dr. First's and Dr. Karathanos's examinations] do not support the postural limitations in that they report minimal abnormalities." R. 29 (citing R. 779-794).  In another summary paragraph, the ALJ noted that the RFC was supported in part by "minimally reduced range of motion of the back and hip" and "no abnormalities of the hands/wrists," citing to Dr. First's report. *Id.* (citing R. 783-785).

      The Court finds that the ALJ misread the record and failed to account for significantly probative evidence that could contradict the RFC.  It is well established that, while the ALJ is not required to discuss every piece of evidence in the record, he must discuss evidence that is inconsistent with the RFC, especially when the evidence is "significantly probative." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  Moreover, "it is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (quoting *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (quotation marks and brackets omitted). *See Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) (finding reversible error where ALJ "passed over significant probative record evidence").  The ALJ also may not mischaracterize or downplay the evidence to support his findings. *See Talbot v. Heckler*, 814 F.2d 1456, 1463-64 (10th Cir. 1987).

      Here, the ALJ appears to have accepted the examination findings of Dr. First and Dr. Karathanos.  However, the ALJ failed to explain how the physical limitations documented in these examinations did not warrant any postural or manipulative RFC limitations.  Most problematic, the ALJ failed to note Dr. First's finding that Plaintiff was unable to effectively grasp tools such as a hammer (R. 785), misreading the record as stating that she *was* able to effectively grasp tools

8

(R. 27). The ALJ then used this misreading to support his conclusion that Plaintiff could perform her past work as a program analyst (which requires frequent handling), noting that "Dr. First [found] no difficulties with her ability to use her hands/wrists." R. 28 (citing R. 779-788). The ALJ's apparent reliance on Dr. First's hand/wrist findings strongly suggests the RFC would have included manipulative limitations had he read Dr. First's findings correctly. In addition, the ALJ represented that Dr. Karathanos noted "a normal motor exam and no focal neurological deficits in the upper extremities" as support for finding Plaintiff was capable of performing past work. R. 28 (citing R. 790). While the ALJ's statement is generally accurate, it fails to account for Dr. Karathanos' own finding of inability to grasp tools such as a hammer (R. 792) consistent with Dr. First's observation. Because the ALJ misstated and ignored significantly probative evidence that may conflict with the RFC, remand is required.

The ALJ further erred in his discussion of Plaintiff's postural limitations. The ALJ rejected the opinions of the reconsideration physical agency reviewer that postural limitations were warranted, because he found Dr. Karathanos' and Dr. First's examinations "do not support the postural limitations in that they report minimal abnormalities." R. 28-29. However, Dr. Karathanos found Plaintiff had a very slow, limping gait, and she could not perform any tandem gait or any walking on heels and toes. R. 790. He further observed bilateral positive straight-leg testing, limited and significantly decreased lumbosacral spine examination, and reduced bilateral reflexes. R. 790, 793. These observations appear to be more than "minimal abnormalities." The ALJ also failed to reconcile Dr. Karathanos' observations with Dr. First's back and hip observations, citing only to Dr. First's report to support his conclusion that Plaintiff had "minimally reduced range of motion of the back and hip." R. 29 (citing R. 783-784). The ALJ should explain his reasons on remand, if appropriate, for rejecting postural limitations in light of

9

Dr. Karathanos' more extreme physical examination observations. *See* Social Security Ruling ("SSR") 96-8p (ALJ must explain how any material inconsistencies or ambiguities in the evidence were considered and resolved).

In his response brief, the Commissioner concedes that the ALJ misread Dr. First's grasping notation. ECF No. 20 at 9. The Commissioner contends, however, that the error is harmless, and the RFC remains supported by substantial evidence, because the "one overlooked limitation" in grasping does not "so overwhelm the record evidence as to require remand." *Id.* In support, the Commissioner points to Plaintiff's own failure to allege any disability or current limitation related to her arms or hands (R. 62, 189, 248, 739); her husband's failure to report any hand issues in a third-party function report (R. 223); and Plaintiff's ability to perform daily activities that require hand use (R. 184-191). The Commissioner further argues that Plaintiff did not report any current hand issues to either Dr. First or Dr. Karathanos (R. 779-780, 789-791), that hand examination by both doctors was normal apart from inability to grasp tools (R. 785, 792), and that neither doctor diagnosed a left-hand impairment. The Commissioner further points out that the ALJ did not find Plaintiff had a medically determinable impairment related to her hands or arms.

The Court rejects these arguments. Although other evidence may have supported a finding of no manipulative limitations in the RFC, the ALJ nonetheless misread Dr. First's findings and then used those findings to support the RFC. R. 28-29. While the Commissioner is correct that the ALJ is required only to consider medically determinable impairments in forming the RFC, the ALJ's assessment of Plaintiff's grasping ability was based on a critical misreading of the record. Moreover, the ALJ found that Plaintiff's history of breast cancer with reconstructive surgery was a non-severe impairment (R. 22-23), and Dr. Karathanos found Plaintiff's grasping limitation resulted from her mastectomy (R. 792). The ALJ is required to consider non-severe impairments

10

in determining the RFC, *Wells v. Colvin*, 727 F.3d 1061, 1069 (10th Cir. 2013), and he failed to do so here based on misreading the record.

The Commissioner relies on the unpublished case of *Lykins v. Colvin*, 657 F. App'x 726, 728 (10th Cir. 2016), in support of his argument. In *Lykins*, the Tenth Circuit panel affirmed the ALJ's decision, even where the ALJ did not discuss an examining physician's occasional grasping limitation, because the doctor's "opinion regarding [the claimant's] ability to grasp tools only occasionally was controverted by every other relevant medical opinion and by [the claimant] herself." *Id.* In light of this other evidence, the court concluded the physician's observation was "not significantly probative." *Id.* The Court finds *Lykins* distinguishable. In this case, the ALJ did not just ignore, but affirmatively misstated Dr. First's finding regarding grasping ability. R. 27. The ALJ then used the misstatement to support the RFC, which included no manipulative limitations. R. 28. Even if other evidence suggests Plaintiff did not experience hand issues, the ALJ was obliged to represent Dr. First's findings correctly, particularly where he chose to rely on those findings in establishing the RFC.

The Commissioner further argues that the ALJ's error is harmless, because the VE's testimony indicated that a limitation in grasping would not be an issue regarding Plaintiff's returning to her past work as a program analyst. Specifically, when Plaintiff's counsel asked whether a person who could only occasionally grasp with the left, non-dominant hand could perform the program analyst job, the VE responded, "Well, grasping's a different issue than fingering. I don't [sic] grasping would be the issue. . . . They're not really grasping to enter data. They're basically fingering." R. 58.

The Commissioner's argument is not persuasive. First, the VE's testimony was insufficiently specific to be useful under these circumstances. Plaintiff's counsel inquired about

11

ability to occasionally grasp with the left, non-dominant hand, to which the VE replied that program analysts are "not really grasping to enter data." The VE did not testify about inability to grasp at all or inability to grasp with either hand. Second, the VE did not testify about any further postural limitations to account for Dr. Karathanos' more extreme physical findings related to ability to walk, stand, and sit due to back problems, as noted above. As a result, the VE's testimony is not conclusive.

Finally, the Commissioner argues that Plaintiff fails to demonstrate how Dr. Karathanos' findings of reduced ranges of motion and other positive findings from the consultative examinations would result in any greater functional limitations than the ALJ provided in the sedentary RFC. However, the ALJ assigned functional RFC limitations based in part on the incorrect finding that Dr. First found no difficulties with use of her hands/wrists and on the incorrect finding that Dr. Karathanos found only "minimal abnormalities." The ALJ further used Dr. First's and Dr. Karathanos' findings as a basis for rejecting any postural limitations, contrary to the reconsideration agency reviewer's opinion, without accounting for Dr. Karathanos' less favorable findings related to walking ability, decreased spinal range of motion, reduced bilateral reflexes, and possible neurological compromise indicated by the positive bilateral straight-leg testing. R. 28-29. Given that the reconsideration agency reviewer considered the consultative examination findings and concluded postural limitations were warranted (R. 73-88), it was unreasonable for the ALJ to reject those postural limitations based on his bare conclusion that the consultative examiners reported "minimal abnormalities." R. 28-29.

The ALJ failed to address Dr. Karathanos' more extreme limitations and both examiners' grasping limitations. Instead, he relied on Plaintiff's own reports of daily activities (R. 185-187, 244-247), treatment notes indicating her pain was reduced by 50% with medications and injections

12

(R. 881-907), his conclusion that Dr. First found "minimally reduced range of motion of the back and hip" (with no discussion of Dr. Karathanos' more extreme findings), and his incorrect conclusion that Dr. First found "no abnormalities of the hands/wrists" (with no discussion of Dr. Karathanos' grasping limitation).  *Id.*  Given these findings, which were based on incorrect and unsupported assessments of the medical record, the undersigned cannot conclude that the RFC would have remained unchanged if the ALJ had properly reviewed the consultative examiners' results.  Accordingly, the ALJ's error is not harmless.  *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (finding that harmless error doctrine applies only in the "exceptional circumstance" where the court could "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way").  The Commissioner's argument, that the RFC is otherwise supported in the record, would require the court to engage in a prohibited "post-hoc justification."  *See id.* (explaining that, "to the extent a harmless-error determination rests on legal or evidentiary matters not considered by the ALJ, it risks violating the general rule against post hoc justification of administrative action").

V.   Conclusion

The ALJ's decision finding Plaintiff not disabled is **REVERSED and REMANDED** for proceedings consistent with this Opinion and Order.  On remand, the ALJ should properly consider the relevant findings from Dr. First and Dr. Karathanos, and any other evidence as necessary, and link his RFC findings to objective evidence in the record.

**SO ORDERED** this 31st day of March, 2021.

JODI F. JAYNE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT